# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ALAN A. TOWNSEND,**

     **Petitioner,**                **CASE NO. 2:11-CV-113**
                                 **CRIM. NO. 2:08-CR-168(2)**
     **v.**                          **Judge Graham**
                                 **Magistrate Judge King**

**UNITED STATES OF AMERICA,**

     **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the *Petition*, Doc. No. 117, as amended and supplemented, *see Order*, Doc. No. 130, Respondent's *Return of Writ,* Doc. No. 126, Petitioner's *Traverse,* Doc. No. 131, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> In June 2008, Townsend and his co-defendant, Courtney Shine, began sending messages to a juvenile, referred to as "Victim A," through an internet chat room, UrbanChat.com. Townsend and Shine contacted Victim A because they wanted her to travel to Florida with them to engage in prostitution. Through these online communications, victim A led Townsend and Shine to believe she was an adult.
>
> Townsend and Shine began calling Victim A, reassuring her that she would be safe with them. On June 9 or 10, 2008, Shine met Victim A at a local park. On June 13, 2008, Townsend, Shine, and their five-year-old son, along with Victim A, left Columbus, Ohio by automobile on a trip to Florida. While traveling, Shine received one or more phone calls from Victim A's family informing her that

Victim A was a juvenile and that they wanted her to return home. Also during the trip, Townsend attempted to groom Victim A to become a prostitute.

When the group reached Florida, Shine engaged in prostitution. Townsend went with Shine on her "dates," while Victim A stayed behind and babysat their son. The group ultimately traveled to Daytona Beach, Florida. There, when left alone, Victim A used a stranger's cell phone to call the Daytona Beach Police Department. Townsend and Shine were then arrested.

In a videotaped interview with the Daytona Beach Police, Shine admitted she was a prostitute and that she was attempting to assist Townsend in convincing Victim A to engage in prostitution. When Shine returned to Ohio, she was interviewed again, this time by the Columbus Police Department. During this second interview, Shine informed the officers that Townsend had initiated the contact with Victim A on UrbanChat.com.

Like Shine, Townsend was interviewed by the Daytona Beach Police Department following his arrest. During his interview, Townsend made several admissions. For example, Townsend stated: "I pimp hos. . . that's how I came at [Victim A]," and "my first intention was to get this girl to come work for me. . . . I brought this girl all the way down here, I might as well get something out of her." In addition, Townsend stated: "my game is impeccable, man. . . . if I wanted [Victim A] really to go out there and sell [sex], I could have had her do it[,]" boasting that he was "reeling her in slowly but surely."

As Townsend's interview with the Daytona Beach Police continued, he went into greater detail regarding his role as a pimp, stating that he required his prostitutes to pay him $1500 a day from their "dates." He also said that he did not discuss the specifics of his prostitution business with Victim A, because "she wasn't . . . a part of [his] team yet" and would not learn "everything until she actually put some money in [his] hand." Townsend further informed the officers that he had been the pimp for as many as four prostitutes.

On July 12, 2008, jail officers recorded a telephone conversation between Shine and Townsend. During this conversation, Townsend instructed Shine to engage in limited prostitution while he was incarcerated, stating: " the ones that you know you can do by yourself, I want you to do that, don't do nothing new at all." He further lamented that he should have allowed Shine to make

pornographic movies instead of prostituting. During this discussion, Townsend and Shine intermittently discussed their pending criminal charges and the evidence against them. In addition, the recorded conversation reveals that Townsend and Shine were involved in a romantic, as well as a business, relationship.

On December 3, 2008, Townsend pleaded guilty to Count 4 of the indictment, charging him with knowingly transporting an individual in interstate commerce with the intent to engage such individual in prostitution, in violation of 18 U.S.C. § 2421 and 18 U.S.C. § 2. The presentence investigation report ("PSR") recommended a base offense level of 24 pursuant to U.S.S.G. § 2G1.3(a)(4)(2008), and a two-level enhancement for his aggravating role in the offense under U.S.S.G. § 3B1.1(c). Townsend's criminal history was set at category V based on 10 criminal history points. The PSR also afforded a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, yielding a total offense level of 23, and an advisory Guidelines range of 84-105 months of imprisonment. See U.S.S.G. ch. 5, pt. A (Sentencing Table)(2008).

The district court conducted a sentencing hearing on May 22, 2009. At the hearing, Townsend objected to the two-level aggravating role enhancement under U.S.S.G. § 3B1.1(c), asserting that he was in an "equal partnership" with Shine. Relying upon Shine's and Townsend's police interviews, as well as the recorded jailhouse conversation, the district court denied Townsend's objection, ruling that he performed "the traditional role of pimp" and "was the manager of the prostitution activities." The district court found that, although Shine was a willing participant in the offense, "there was a leader, and it was Mr. Townsend. So, even if Ms. Shine were a partner. . . Mr. Townsend's role here was senior partner." The district court thereafter sentenced Townsend to ninety-six months of imprisonment.

*United States v. Townsend,* No. 09-3642, Doc. No. 115. Petitioner filed a timely appeal, asserting that the District Court had improperly enhanced the sentence recommended by the United States Sentencing Guidelines under U.S.S.G. § 3B1.1(c) and that his sentence was procedurally and substantively unreasonable. *See id.* On September 13, 2010, the Court of Appeals affirmed Petitioner's sentence. *Id.* On October 18, 2010, the Court of Appeals issued its mandate. Doc. No.

116.

On February 4, 2011, Petitioner filed his *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. In his amended and supplemented petition, Petitioner alleges that the breach of his plea agreement renders his guilty plea invalid; he also claims that he was denied the effective assistance of counsel because his attorney failed to object to or raise on appeal an issue regarding the alleged breach of his plea agreement. Specifically, Petitioner complains that the terms of his plea agreement were violated because the District Court imposed a five year term of supervised release when the plea agreement indicated that he faced a maximum term of only three years supervised release. Petitioner also asserts that he was denied the effective assistance of counsel because his attorney failed to object to a three point enhancement of his sentence based on his 1996 conviction for attempted robbery and failed to advise him that he would be required to register as a sex offender under the terms of supervised release.

It is the position of the Respondent that Petitioner waived his right to raise these claims under the terms of his guilty plea and, alternatively, that Petitioner's claims are without merit.

## GUILTY PLEA WAIVER

According to Respondent, Petitioner waived his right to pursue collateral relief under the terms of his negotiated *Plea Agreement*, Doc. No. 67. The *Plea Agreement*, however, indicates that Petitioner reserved his right to appeal or to challenge his sentence in post conviction proceedings on grounds that his guilty plea was involuntary or that he was denied the effective assistance of counsel. *Id*, at ¶13. Petitioner raises these precise issues in this action. Moreover, Petitioner's assertion that his guilty plea is invalid raises an underlying issue as to the enforceability of that plea. Furthermore, the Court notes that Petitioner's challenge to his sentence on direct appeal was

entertained, notwithstanding the terms of the *Plea Agreement*.

In sum, the Court is not persuaded that Petitioner's *Plea Agreement* forecloses this Court's consideration of the issues presented in this habeas corpus petition.

## BREACH OF *PLEA AGREEMENT*

Petitioner challenges his guilty plea as invalid and not knowing, voluntary or intelligently made because he was sentenced to a five year term of supervised release but his *Plea Agreement* indicated that he faced a maximum term of only three years supervised release. However, Petitioner failed to raise this claim either at sentencing or on direct appeal. He has therefore waived this Court's consideration of this claim unless he can establish cause and prejudice for this procedural default. *See Bousley v. United States,* 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 165 (1982).

Petitioner asserts that he failed to object at sentencing and did not raise this claim on appeal due to the ineffective assistance of his defense counsel. Upon review of the record, for the reasons that follow, this Court concludes that Petitioner has failed to establish the ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). He has therefore also failed to establish cause for his procedural default of this claim.

## INEFFECTIVE ASSISTANCE OF COUNSEL

As cause for his default, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to object to or raise on appeal a claim regarding the alleged breach of his plea agreement based on the imposition of a five year term of supervised release, when his *Plea Agreement* indicated that he faced a maximum of only three years supervised release. *See also Guilty Plea Transcript*, at 9. Similarly, Petitioner complains that neither the Court nor his

attorney advised him, prior to the entry of his guilty plea, that he would be required to register as a sex offender for twenty-five years. Petitioner insists that he would not have entered a guilty plea had he known of this penalty and of this requirement. He goes on to argue that the evidence against him was weak: he never admitted to police that he worked as a "pimp" for the alleged victim, there was no evidence that the alleged victim gave him money from performing sexual acts and, because the alleged victim had lied about her age and identity, he had no reason to know that she was only fourteen years of age.

.        Petitioner acknowledges he was advised, after he received a copy of the *Presentence Investigation Report* (recommending 105 months imprisonment and five years supervised release) that he would be required to register as a sex offender and that he faced a mandatory term of supervised release ranging from five years to life. Petitioner contends that, although he wanted to object to his sentence at sentencing and on direct appeal, his attorney improperly advised him against doing so and refused to raise the issue on appeal. *See Addendum to § 2255 Motion*, Doc. No. 117; *Motion to Amend and Supplement 2255,* Doc. No. 122. In this regard, Petitioner refers to his June 26, 2010 letter to defense counsel indicating that, prior to sentencing, he had asked his attorney about the recommendation in the *Presentence Investigation Report* that he serve five years on "probation" even though the *Plea Agreement* indicated that he would serve no more than three years on "probation."

> You stated that it did not matter, but in actuality it does. I found cases . . . to back up my argument that I am here on an illegal sentence. If it is too late to bring up this argument [on direct appeal] then I will [] raise the issue at my re-sentencing. If we should [] lose my direct I have plenty of ammo for my 2255. Please write me and tell me what you think.

*Exhibit B* to *Traverse*.

Petitioner also refers to the letter his attorney wrote in response, stating in relevant part:

> As to the withdrawal of the plea issue, I am well aware of the caselaw on that issue. I do not think you have a good claim on that issue but you are certainly free to raise the issue in a 2255 motion. It could also be brought up if we are granted a new sentencing hearing but if you try to undo your plea, you start all over again and would face the more serious charges which were dismissed in exchange for your guilty plea.

*Exhibit A to Motion to Amend and Supplement 2255*, Doc. 122. In addition, Petitioner refers to the

*Plea Agreement*, the *Judgment*, Doc. No. 100, and the transcript of his change of plea proceeding,

Doc. No. 111..

In response, Respondent has submitted an affidavit from defense counsel, Attorney Kort W.

Gatterdam, who avers in relevant part as follows:

> I was appointed by this Court on November 13, 2008 to handle [this case]. I previously represented Mr. Townsend, by appointment, in his last federal felony case, U.S. v. Townsend, 2:04-cr-00034, in 2004. I also represented Mr. Townsend, by appointment, for his revocation of supervised release hearing before this Court in July 2008 in Case No. 2:04-cr-00034.
>
> . . . Mr. Townsend is correct that it was initially represented to him in the plea agreement that if he pled guilty, he would be placed on three years of supervised release. (R.67, Plea Agreement). However, I reviewed this matter with Mr. Townsend after the initial presentence investigation report (PSR) suggested the proper term of supervised release, pursuant to 18 U.S.C. § 3583(k), was five years to life, and with the U.S. Probation Officer recommending a five-year term of supervised release. When I discussed the initial PSR with Mr. Townsend, I explained that a five-year minimum term of supervised release was required. I discussed that the U.S. Probation Officer could have recommended a longer term. I also gave Mr. Townsend a copy of the final PSR which still included the explanation that he was subjected to a minimum of five years of supervised release. Mr. Townsend did not indicate he wanted to withdraw his plea then or at any time prior to or during his sentencing hearing based upon the fact that he was subject to a five year to life term, not a three-year term of supervised release. He never indicated

this was a major factor in his decision to enter a plea. In addition, prior to his sentencing, I sent Mr. Townsend a copy of his co-defendant's sentencing entry which had the same term of supervised release in her entry. . . .

I have also reviewed that Mr. Townsend alleges he was not advised of the likelihood that he would have to register as a sex offender pursuant to 28 U.S.C. 3583(d) and will be subject to the notification procedures of 18 U.S.C. 4042(c) and/or any state sex offender notification provisions during the term of his supervised release. I do recall discussing these terms with Mr. Townsend. The initial PSR recommended said term of supervised release and I always go over all parts of the initial PSR with my client to make sure they understand it and have an opportunity to raise any objections to me so I can consider objecting to the initial PSR. I gave Mr. Townsend a copy of the final PSR which still included this as a term of supervised release. At no point prior to or during Mr. Townsend's sentencing hearing did he express a desire to withdraw his plea on the basis that he would be subjected to these conditions during supervised release. In addition, prior to his sentencing, I sent Mr. Townsend a copy of his co-defendant's sentencing entry which had the same term of supervised release in her entry. . . .

*Affidavit of Kort W. Gatterdam, Appendix A* to *Return of Writ.*

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. at 687, applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to

satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

The *Strickland* test also applies to appellate counsel. *Burger v. Kemp,* 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The United StatesCourt of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

A. Were the omitted issues "significant and obvious?"
B. Was there arguably contrary authority on the omitted issues?
C. Were the omitted issues clearly stronger than those presented?
D. Were the omitted issues objected to at trial?
E. Were the trial court's rulings subject to deference on appeal?
F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
G. What was appellate counsel's level of experience and expertise?
H. Did the petitioner and appellate counsel meet and go over possible issues?
I. Is there evidence that counsel reviewed all the facts?
J. Were the omitted issues dealt with in other assignments of error?
K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir.1999). This list is not exhaustive and need not produce a certain "score." *Id.* at 428.

In the case presently before the Court, Petitioner has failed to establish that he was denied the effective assistance of counsel based on his attorney's failure to object to at sentencing or raise on appeal an issue regarding the imposition of five years supervised release or his advice to Petitioner against raising that issue on appeal.

Petitioner was charged by way of indictment with four (4) counts: (1) knowingly recruiting or transporting a person under the age of 18 in interstate commerce, knowing that force, fraud and coercion would be used to cause [her] to engage in a commercial sex act in violation of 18 U.S.C. § 1591(a)(1), (b)(2); (2) knowingly transporting a person under the age of 18 in interstate commerce with the intent that [she] engage in prostitution, in violation of 18 U.S.C. § 2423(a); (3) using any facility of interstate commerce to knowingly persuade, induce, entice or coerce an individual under the age of 18 to engage in prostitution, in violation of 18 U.S.C. § 2422(b); and (4) knowingly transporting an individual in interstate commerce with the intent that such individual engage in prostitution in violation of 18 U.S.C. §2421. *Indictment,* Doc. No. 13. Each of these charges carried a possible term of imprisonment ranging from ten years to life. Pursuant to the terms of his *Plea Agreement*, Petitioner would plead guilty to Count 4 of the *Indictment*, *i.e.*, transporting an individual in interstate commerce with intent to have her engage in prostitution in violation of 18 U.S.C. § 2421, and the United States would dismiss the remaining charges against Petitioner.

Petitioner's argument to the contrary notwithstanding, the record reflects substantial evidence of Petitioner's guilt. *Transcript of Change of Plea*, Doc. No. 111. Special Agent Kristin Cadieux summarized the facts as follows: On June 5, 2008, Petitioner and Courtney Shine, his girlfriend, began sending e-mails, through a chat room, to the alleged victim, who was 13 years of

age.[1]  They later began calling her in an attempt to convince her to travel with them to Florida so that they could introduce her to the life-style of prostitution.  Shine assured the victim that she would be safe and that there was nothing to worry about.  Shine also gave the victim a cell phone number.  On June 13, 2008, the victim met with Petitioner and Shine and the group embarked on a trip to Florida.  During the trip, Shine received one or more telephone calls from persons inquiring as to whether or not "Precious" (the victim) was with them and advising that the victim was actually fourteen years old and that her family wanted her to return home.  Shine stated to police in a videotaped interview after her arrest that she was a prostitute and had attempted to assist Petitioner in convincing the victim to engage in prostitution in Florida.  Both Petitioner and Shine had discussed the prostitution business with the alleged victim and Petitioner advised her on different sex acts that could generate money.  In a videotaped interview,  Petitioner stated that he brought the victim to Florida intending to convince her to perform sex acts for money.  *Id*. at 20-22.  Petitioner admitted to the truth of these facts.  *Id*. at 23-24.  The record also includes the suggestion that, when the victim asked Petitioner, while they were at a rest area on their way to Florida,  if she could go home, Petitioner told her that she could not.  *Presentence Investigation Report*, ¶ 17.

Petitioner told police, "What I do I pimp ho's, that's how I came at her."  *See Return of Writ*, at 3 (internal citation omitted).  "My first intention was to get this girl to come work for me. . . . I brought this girl all the way out here I may as well get something out of her."  *Id.*  "My game is impeccable.  If I wanted [the victim] to sell [sex] I could have had her do it."  Petitioner told police that he was "reeling" the victim in and that he had worked as a pimp for at least four prostitutes.  *Id*.

_____

[1]  The *Presentence Investigation Report*, ¶16,  indicates that the victim was 14 years of age.

at 4-5.  The evidence against Petitioner also included a tape recorded telephone conversation between Petitioner and Shine during which Petitioner directed Shine to work as a prostitute to make money while he was in jail.  *Id.* at 4.

Petitioner argues that the government could not have proven the charges against him because he did not know that the victim was a minor.  However, Counts 2, 3 and 4 of the *Indictment* did not require proof that Petitioner knew that his victim was a minor.   "[A] defendant commits a crime [under 18 U.S.C. § 2421] any time he transports an individual for the purpose of prostitution." *United States v. Daniels,* 653 F.3d 399, 410 (6th Cir. 2011).  Under 18 U.S.C. § 2423(a), the defendant bears the risk that the person he transported is underage.  *Id.*  Defendants who, for example,  are mistaken as to the true age of the person or have been communicating with an adult FBI agent posing as a minor may nevertheless be convicted under 18 U.S.C. § 2422(a).  *See United States v. Fuller*, 77 Fed.Appx. 371, 378, unpublished, 2003 WL 22331999, at *5 (6th Cir. Oct. 9, 2003)(citations omitted). Although a conviction under 18 U.S.C. §§ 1591(a) does require proof that the defendant knew that the victim was a minor, there is ample evidence that Petitioner in fact had such knowledge.  The victim's mother stated that "she and other friends and family members contacted the defendant telephonically after her daughter was missing [and] informed Townsend and/or Shine that [the victim] was only 14 years old and requested that Townsend and Shine bring her back home."  *Presentence Investigation Report,* ¶ 22.  Moreover, none of the charges against Petitioner required that the government prove that the victim actually committed sex acts for money which she then provided to Petitioner.

Thus, it appears that the government could have establish all the charges facing Petitioner. By entry of his guilty plea, Petitioner substantially reduced his potential prison exposure, which

included terms of imprisonment ranging from ten years to life as well as a life term of supervised release. By pleading guilty, Petitioner also obtained a three level reduction in his recommended sentence under the United States Sentencing Guidelines for acceptance of responsibility and timely notifying authorities of his intention to plead guilty. *Presentence Investigation Report*, ¶¶36, 37. Under these circumstances, it is unlikely that any competent counsel would have advised Petitioner against pleading guilty pursuant to the terms of the *Plea Agreement*, and against attempting to withdraw his guilty plea based on the error in the *Plea Agreement* relating to the applicable term of supervised release. *See Presentence Investigation Report*. To do so would have subjected Petitioner to the possibility of a much greater sentence. Although Petitioner's recommended sentence under the United States Sentencing Guidelines was 84 to 105 months imprisonment, and although the Probation Officer recommended a sentence of 105 months, Petitioner was actually sentenced to only 96 months imprisonment and the mandatory minimum term of five years supervised release. Conviction on any of the charges against him would require that Petitioner register under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911(3); 16915(a)(2), as a sex offender for twenty-five years.

As to defense counsel's failure to raise these claims on direct appeal, Petitioner cannot establish that his counsel was ineffective under the two-prong *Strickland* test. Again, the imposition of five years supervised release and the registration requirement is mandatory and the record reflects substantial evidence of Petitioner's guilt. Even assuming that his attorney were successful in vacating Petitioner' conviction on direct appeal, Petitioner then would then have been faced with the option of proceeding to trial on all four charges returned in the *Indictment* or entering a guilty plea. Under either scenario, and considering that the evidence against him was strong, Petitioner

would have faced, at minimum, the same sentence previously imposed, and could have potentially faced a much more severe sentence.

Petitioner also contends that he was denied the effective assistance of counsel because his attorney failed to object to a three point increase in Petitioner's prior criminal history score based on his 1996 attempted robbery conviction. Petitioner argues that this increase was not authorized by U.S.S.G. § 4A1.2(d)[2] because he was 17 years of age at the time, and that he was therefore subjected to a greater recommended sentence. *Motion to Supplement 2255 Petition*, Doc. 121.

This Court is not persuaded by this argument. Defense counsel actually objected to the inclusion of these three criminal history points. *See Presentence Investigation Report*. The Court overruled the objection, concluding that the Probation Officer had correctly included the prior conviction because Petitioner was convicted as an adult. *Sentencing Transcript*, at 4-5. Petitioner therefore cannot establish the ineffective assistance of his counsel on this basis.

For all these reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**PROCEDURE ON OBJECTIONS**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific

---

[2] U.S.S.G. 4A1.2(d)(1) provides:

Offenses Committed Prior to Age Eighteen

If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points. . . for each such sentence.

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

　　*s/ Norah McCann King*　　
Norah McCann King
United States Magistrate Judge

May 16, 2012